CampbelTj, S. J.
Preliminary to the examination of Haynie’s title, an objection urged by his counsel makes it necessary for us to ascertain whether it is prop -rly before us. It is objected that, inasmuch as the record does not show a disagreement of the counsel conducting the cause in the District Court, the judge had no right to certify a statement of facts. To this I cannot assent. iCis true that counsel must disagree before the judge is authorized to make out a statement, but it is not therefore true that such disagreement should appear of record. The latter part of the 135th section of the District Court act of 1846 pro vides, that, where counsel disagree, they shall respectively furnish statements of the evidence to the judge, ‘‘who, from the “ statements so furnished him and hi£ own knowledge, shall, during- the term “at which the trial was had, make out a correct and exact statement of the “facts of the cause as given iu evidence, and shall sign and seal the same and “ cause it to be filed.” In this case the statement sent up does not affirmatively show that a disagreement took place between the respective counsel; but, as the judge’s name is alone signed to it, the presumption is irresistible that it did.
But, had (he record contained no such statement, it is believed that the appellant’s bill of exceptions brings up the appellee’s title. It is true that its authentication was alone objected to; still as it is in the record and makes part of it, it is in for all purposes, and the right to pass upon it cannot, I conceive, on any satisfactory ground, be denied.
As it would occasion this opinion to be extended to too great a length, a discussion and determination of the many errors assigned will not be made. The chief and leading point this court must determine is, whether Haynie’s title is a valid substituting title or not; and that point, it is believed, the 4th, lfith, and 11th errors assigned raised.
*232 Although, in the argument, Haynie’s counsel is understood to have resisted' the attacks, or many of them, made upon the title because the objection urged1 in the District Court only extended to the certificates of authentication, still, I am of opinion those attacks are legitimate, and that it is proper to assail it, if on its face the grant is open to objection. Special pleas were not necessary. The general denial put the appellee upon proof of his right to recover the land in controversy, and that proof must be sufficient for the purpose. The Supreme Court, in the case of Mason v. Russell, 1 Tex. R., 726, not only determined that such was the effect of the general denial in actions of trespsass, but that, under it, proof having relation to objections dehors the grant was admissible.
With these remarks the examination of the question whether- the grant to-Haynie is a good and valid grant will be proceeded with.
Haynie, the title shows, represents that he is a resident and citizen (special letters of citizenship having been granted to him by the Government) of Bexar; that it is liis intention to settle himself in the country, and asks that there be conceded to him, in virtue of the 17th article of the colonization law of March 24-th, 1825, one league of land of the vacant lands of the State. It also shows that Padilla represents Ilaynie’s application to the Governor favorably, and states that he is a widower with one child, absent with her relations in the United States of the North. It also represents that the Governor, on the 20th of April, 1830, in virtue of the law of 1825, concedes the land petitioned for, and authorizes Padilla to put Haynie in possession of the land he may select and extend to him the necessary title. And it also shpws that upon Haynie’s petition, preferred in 1834, to Willliam I-I. Steele, l’epresented to have been specially commissioned for that purpose, the latter deeded to Haynie the land in suit.
Haynie’s title, his counsel warmly maintains, is good and valid under the 17th article of the law of 1825.
‘’Article 17. It appertains to the Government to augment the quantity indi- “ cated in 14-th, 15th, and 10th articles in proportion to the family, industry, and “ activity of the colonists, agreeably to the information given on this subject by “ the ayuntamientos and commissioners, always bearing in mind the provision “ of .article 12 of the decree of the General Congress on the subject.”
The inquiry arises, to what class of persons was the above provision intended to apply, and what was the character of the bounty intended to be bestowed? Colonists were to be the benefiearies, but not in a restricted sense. The word was designed to embrace the character of emigrants described in the 14th, 15th, and 16th articles of the law, that is, married and single men introduced in connection with some special enterprise of colonization, and similar persons who may “ have emigrated separately and at their own ex- “ pense.” These two classes constituted colonists in the meaning of the section, and a distinguishing characteristic that they 'were colonists was their being attached to' some new town, or, in better understood language, some-empresario colony. No other character of colonist, if any there was, it is-believed, was in the contemplation of the article cited.
But, and the other branch of the inquiry comes up, what was the character of the bounty intended to be bestowed on colonists? The words of the article are, “It appertains to the Government to augment the quantity indicated, &e., “ according to the family, industry, and activity of the colonists.” Now, what are we to understand by augmentation? Is it an original concession of some certain quantity, or an increase allowed in addition to a quantity already given? Lexicographers define augment to mean, “an enlargement by addition,” “to- “ enlarge in size;” “ to swell.” (Webster.) And so I understand it. Then I do not take the article 17 as authorizing an original grant of land, even to a colonist. Other articles apply to that description of grants, and not the 17th.. It, in ni}’' judgment, must necessarily be understood as assuming that the colonist claiming the benefit of its provisions has already obtained land. It does not, it will be seen, warrant concessions to colonists as mere colonists, but to-colonists who, in consequence of either their family, industry, or activity are *233 entitled to greater consideration. I presume it will not be claimed that one having neither a family or any special industry and activity would, under this article, have any claim on the bounty of the Government.
But we are not without an almost contemporaneous construction of this article. In the instruction of 1827 to the commissioner this article is found :
“Article 25. Should any colonist solicit, in conformity with the 17th article “of the law, an augmentation of land, beyond that designated in the preceding articles, on account of the size of his family, industry, or capital,” &c. Here wo see. that the augmentation is to be beyond that designated in the 14th, 15th, and IGth articles of the law of 1825, and is to be regulated by the size of the family, &c.
It may be said, too, that it has received a construction at the hands of the Supreme Court. In the case of Norton's succession v. The Commissioner of the General Land Office, (2 Tex. R., 357,) it was decided that the Board of Land Commissioners were not authorized to confirm an augmentation. Their province simply -was to adjudicate headlights.
So simple, apparently, is the language of the 17th article, that I might, I think, rest satisfied with what I have said in relation to the character of the concession it was intended to encourage; but I will adduce another.
Colonists, so called, that is, those introduced by a contractor, it will be remembered, did not derive their titles from the Government proper. They helcl: no communication with it. A commissioner ascertained their qualifications, and, wit.li the approbation of, the empresario of the colony, put them in possession of their lands and extended to them their titles. A settler, after attaching himself to a colony, was admitted by the political authority, who made-their report to the Government; and the last either put them in possession or ordered it to be done by a commissioner. But under the 17th article this course was not adopted. The words of the article are, “It appertains to the “ Government to augment the quantity,” &c. Here, we see, the grant was the act of the Government and was limited by its discretion. It was to one requiring no examination by a commissioner as to his religion and moral character, but to one entitled by merit to the public liberality. These grants came from a source the others did not, and lienee are in their nature different:.
But a further analysis of the 17th article may with propriety be made. The Government, it appears, could augment the quantity, &c., “agreeably to the “ information given by the ayuntamientos and commissioners.”' Here the two-authorities are connected by the word “and,” and it is believed that the concurring and conjoint representations of the two were necessary.
It may be said that this view is too strict, and that a commissioner alone was competent to make the required representations to the Government. "Whether it is, can be best ascertained by an examination of the colonization, law in its general scope.
By the oth article colonists were required to prove their Christianity, morality, and good habits, by the production of a certificate from the place whence they came, which certificates the commissioner was required scrupulously to. examine, and which were to he passed to the empresario, and unless the two concurred, the colonist could not obtain the land he asked for. Similar strictness was made necessary as to settlers. They were made to report themselves to the political authority, and the last reported them to the Govern-, ment. How, here we see a colonist or settler could not obtain land upon the simple unsupported opinion of one functionary. Several had to authenticate their qualifications. There had to be, in the one case, the concurring approval of the. empresario and commissioner; and in the other, that of the political authority and the Government. Why was this extreme caution observed? As staled in the 2d article of the instructions of 1827, it was that the State might not be imposed on by “false recommendations.” Although the Gov-t ernment may justly be said to have acted with great liberality in the disposi *234 tion of its domain, still we see that it observed every precaution to avoid imposition.
Note 75. — Prior occupancy is sufficient title to recover against a wrong-doer. (Wilson v*. Palmer, 18 T., 592.)
How, would there not have occurred as great a probability of imposition under the 17th article as any other? It seems to me that greater caution should have been observed in regard to grants made under it than under any other. The quantity Contemplated was beyond a colonist grant, and the representations leading to them were made to the Government located, as we know, remotely from the place at which the commissioner and colonist were established, and from which remoteness the Government without great trouble would have found it impracticable to learn whether a meritorious demand had been made or not. A corrupt commissioner acting alone aud without any check, could have carried into execution frauds of no inconsiderable magnitude.
But give to the article the interpretation assumed, and the liability to imposition would not be likely to occur. The ayuntamiento being composed of several, the chances of imposture would be correspondingly diminished. This body too was in frequent communication with the Government.
Such is the construction to which the 17th article of the law of 1S25 is, in my opinion, entitled, and it only remains to be ascertained whether the facts disclosed by the appellee’s grant can he brought within its shelter.
Was Haynie a colonist, either in connection with any empresario contract, or a settler in the sense of the lGtli section? It cannot be pretended that lie was. If the first, his tille would have emanated from the commissioner of a colony with the consent of the empresario. The Government would not have appeared connected with the grant, it not being an augmentation. If llie last, the grant would have issued directly from the Government or a special commissioner, the political authority of the place to which he had attached himself having first admitted him and put him in possession of his lands. Neither as a colonist or settler, as understood by the 14th, loth, lGtli, and 18th articles of the law of 1825 is he shown to be by his title.
Is I-Iaynie’s grant an augmentation? It will not be pretended. Every statement in his title shows that he had received no antecedent grant of land. He does not in terms ask for an augmentation; aud the facts stated by him and Padilla in relation to his circumstances sot up no right to demand anything of the kind. He is represented as a clothing merchant, resident in San Antonio de Bexar, aud not a colonist settler. Ho one fact is alleged calculated to identify him as of the classes of settlers described in the 14th, loth, and 16th articles of the colonization law.
■Neither does it appear that his application had been submitted to the Government by the ayuntamiento aud commissioner; and as it was not, though it could be considered an augmentation, the Government was without authority to concede the land under the 17th article.
Under this view of the 17th article, then, it will be seen Haynie can find no protection. And it is believed that he is equally unprotected by the other articles of the law. He has disclaimed taking- as a purchaser; and properly, inasmuch as Mexicans by birth could alone in that way acquire lands. And it has not been claimed for him that his grant is good under the 3d and 4th articles.
As the opinion given must be decisive of the title, there could be no propriety in discussing the other errors assigned. They will therefore not be noticed.
I deem itdue to m3rself to say that it has been my auxious desire to affirm the judgment, for it may be that Haynie had just claims upon the bounty of the State, but, regardless of that desire, my views of the colonization law of 1825 have not allowed me to do so. Let the judgment be reversed aud the case dismissed.
Reversed and dismissed.
Wheelbe, J., dissented.