## DARCY & WHEELER V. JOHN TURNER & CO.

1. PRACTICE—STATEMENT OF FACTS.—Where a statement of facts, filed in case of appeal, is not signed by counsel, but is properly signed by the presiding judge, it will be presumed that it was made in that form because of the disagreement of counsel; and when the statement of facts is only certified to by the judge, as containing "all the evidence material in the case," the statutory meaning of the certificate is not thereby changed by such qualifying words.

2. NEW TRIAL—DAMAGES.—Whilst courts should be slow to interfere with the verdict of a jury on a claim for damages, when the measure of damages is indefinite, they should not hesitate to do so when the error in the verdict is manifest.

3. FACTS ON CLAIM FOR DAMAGES FOR WRONGFUL SUING OUT AN ATTACHMENT.—See facts stated in the opinion, which were held insufficient to authorize the verdict on a claim for damages for wrongful suing out of an attachment.

APPEAL from Rains. Tried below before the Hon. Z. Norton.

*C. Payne*, for appellants.

*J. J. Hill*, for appellees.

GOULD, ASSOCIATE JUSTICE.—Darcy & Wheeler, merchants, of New Orleans, sued the defendants, John Turner & Co., who were or had been merchandising in Emory, Rains county, Texas, on two promissory notes, which, at the time the suit was commenced, (December 30, 1871,) had both been due for some months, and amounted, with interest, to $1,415.60. They at the same time sued out an attachment, on the ground that the defendants had transferred their property for the purpose of defrauding their creditors. The attachment was levied on a tract of land of ten acres, and on a town lot in Emory, including a storehouse occupied by defendants. A number of persons indebted to the firm were also served with writs of garnishment. In July following, the writs of attachment and garnishment were quashed on motion of the de-

fendants. The defendants also answered, denying that they had transferred their property for the purpose of defrauding. their creditors, and alleging that the attachment had been sued out wrongfully and maliciously; had resulted in the destruction of their credit and business, and had damaged them and the defendant Turner in a large amount.

The case was tried at the November Term, 1874, and resulted in a verdict by which the jury found for plaintiffs the notes sued on, principal and interest, $1,796.60. Also for defendants' actual damages to the amount of $2,250, which the verdict proceeds to say is an "excess of $553.40 in favor of defendants," and judgment was accordingly rendered in favor of defendants for $553.40.

Their motion for new trial being overruled, the plaintiffs have brought the case up by appeal, and the principal question in the case is the sufficiency of the evidence to support the verdict.

The jury, in finding the difference between the two amounts named in their verdict, make a mistake of $100 against plaintiffs, and that mistake is carried into the judgment, and is assigned as error. This error, however, is one which might be corrected in this court without remanding the case.

The appellees contend that the statement of facts is defective and cannot be regarded, because it is not signed by the counsel for either party, and is only certified by the presiding judge as containing "all the evidence material in the case."

In cases of appeal, where the statement of facts is not signed by counsel, but is properly certified by the presiding judge, it will be presumed that it was made in that form because of the disagreement of counsel. (Harlan v. Haynie, 9 Tex., 459; Lacey v. Ashe, 21 Tex., 395; Kelso v. Townsend, 13 Tex., 140.) The use of the words "evidence material in the case," in the judge's certificate, does not change its substantial meaning. The use of some such qualifying words seems not uncommon. (13 Tex., 140; 21 Tex., 395.)

Our examination of the evidence, as set forth in this state-ment of facts, has led us to the conclusion that the defendants failed to establish a case entitling them to the amount of damages allowed them by the jury, and that the court erred in refusing to set the verdict aside.

To attempt to give in detail the evidence of each witness would be tedious, and, instead of taking that course, the uncontroverted or incontrovertible facts to be deduced from that evidence will be stated, with the addition of so much of the testimony on contested points as seems necessary to a fair presentation of the case.

The defendants, John Turner and Alexander Cox, during the year 1871, carried on business as merchants in Emory, and stood fair in their credit.   As late as March of that year the plaintiffs sold them a bill of goods.   Their condition, as stated by Cox, was as follows: They were merchandising on about $6,000 worth of goods, were indebted about $8,000, and had assets to the amount of $10,000 or $12,000.   He afterwards says that they had sold goods on a credit to the amount of $3,000 or $4,000, and it would seem that the goods, these claims, and a storehouse, which cost about $1,000, con-stituted the assets of the firm.   This storehouse was sold by Turner, on whose land it appears to have been situated, before the date of the attachment.   Some month or more before the issuance of the attachment they removed the greater part of their stock from Emory to Stringtown, in Hunt county, and, on the 8th day of December, 1871, sold the goods so removed, or so much of them as then remained unsold, to one Morgan, of Hunt county, for the price of $5,000, taking his note, with-out security, for the amount, and executing to him a bill of sale, which was placed on record.   These goods were invoiced to the amount of $2,500, and the balance, as Morgan testifies, was guessed at.   Morgan, according to the testimony, was a poor man, and there is no evidence tending to show that the sale could be regarded as a profitable or proper business trans-action.

In December, 1871, Darcey, one of the plaintiffs, traveling through the country, heard of the removal of the goods, and turned his course to Emory. At that time, Cox says, they had about one thousand dollars' worth of goods in the house. The sheriff who made the levy says there were very few goods, if any, in the house, and he did not think there were enough to levy on. In fact, they were not levied on, but were afterwards, Cox says, moved away by Turner & Co. Another witness says that defendants were not doing business in Emory where the attachment was sued out. Cox says that Darcey came to him before suing out the attachment, and "that he offered to pay him in notes, or what either of the firm had, their home even." Darcey demanded money, and sued out the attachment and writs of garnishment. The attachment was levied on the two tracts of land, neither of which belonged to the firm. Turner was part owner of one of the tracts, on which was situated a mill, and there is evidence as to damage from stoppage of the mill for from two to four days. The sheriff says it was not stopped at all. There is evidence that the writs of garnishment were served on persons owing the firm about two thousand dollars, of which, after the discharge of the writs, Cox says he collected not much over half. Of the remainder, some, he says, were insolvent, and some not. One debtor to the amount of $100, Cox says, left the county before the writs were discharged; but could not say what he would have collected. There is no other evidence of damage by reason of the garnishments, nor—save the evidence as to damage to the credit of the firm, which will be detailed hereafter,—is there any further evidence of damage worthy of consideration.

Cox testified that the sale to Morgan was in good faith, and that they moved the goods to make room for more. Morgan was introduced, and did not recollect whether the note he gave was due one day after date, or what time it was given, or the rate of interest. Both he and Cox say they told him that any arrangement he might make for their paper

3

they would allow as a credit on his note. Morgan, it seems, kept the goods about a month, and sold some on time and some for cash, and then entered into an arrangement with two firms, creditors of Turner & Co., who had sued out attachments and were seizing the goods, by which he transferred the goods to them, receiving in payment their claims on Turner & Co., to the amount of about five thousand dollars, and, from the testimony of Upthegrove, who brought about this arrangement on behalf of their creditors, receiving also about four hundred dollars.

Upthegrove testified that Morgan admitted to him that the sale was a sham. Morgan denied any such admission. He says that he turned over the money, &c., to the defendants after he made the sale to the attaching creditors.

Under this evidence, the jury saw fit to find that the attachment was wrongfully issued, and it is not proposed to discuss the correctness of that finding. But certainly there is no evidence of damage to the firm in anywise approaching the sum of $2,250, unless it be in damage to their credit. There was no seizure of goods or closing of doors leading to loss. The injury by the stoppage of the mill, which, under the strongest view of the evidence, did not amount to very much, was an injury to Turner alone, and certainly cannot support a judgment in favor of the firm. If the evidence on the subject of the garnishees establishes with sufficient certainty any damage, it is certainly no large amount. The only remaining ground is damage to the credit and standing of the firm. There is evidence that prior to the removal of the goods the firm stood fair, and one witness, besides Morgan and Cox, says that this was so up to the date of the attachment.

Several witnesses, however, testify that after the removal of the goods the firm was regarded as in a failing condition. The sale of nearly their entire stock to Morgan and the sale of their storehouse was certainly not calculated to improve their credit. In fact, it is in evidence that another attach-

ment suit, coming from a different county, reached the office of the district clerk on the night of the same day that plaintiffs sued out theirs. If it be true that the firm ceased to have credit after the attachment, there is no witness who testified that this attachment was the cause. Certainly it is true that the issuance of an attachment against a merchant is well calculated to affect his credit injuriously. Cox says he has not done business since the attachment; that he depended on his credit, which up to that time was good. Since then he has no credit. But here there were other and prior causes existing, calculated to produce the same effect. It requires a stretch of credulity to believe, that the credit of defendants as merchants could have been worth much to them, after the very unusual course pursued by them in their business. The amount of damages allowed by the jury was unwarranted by the testimony; and whilst courts are slow to interfere with verdicts where the measure of damage is indefinite, they should not hesitate to do so where the error of the jury is manifest.

The judgment is reversed and the cause remanded.