HANKINS v. DILLEY et al. (No. 1392.)

(Court of Civil Appeals of Texas. Amarillo. Oct. 23, 1918. Rehearing Denied Nov. 27, 1918.)

1. BOUNDARIES ⟨⟩32—PLEADING AND EVIDENCE—VARIANCE.

In a boundary dispute, where petition referred to plaintiff's survey as being 1,900 varas square, but also distinctly referred to lines evidenced by iron pipe corners, that a slight excess over 1,900 varas was shown to exist between the corners was not a fatal variance.

---

2. APPEAL AND ERROR ⬤⟿930(4) — GENERAL VERDICT—PRESUMPTIONS.

In a boundary dispute, where court instructed that if it should be found that several lines were located by a surveyor, with reference to certain mounds, then the verdict should be for plaintiff, "otherwise, the finding should be for the defendant," and the jury returned a general verdict for plaintiff, there is no presumption that issues not submitted were resolved by the court in plaintiff's favor.

3. BOUNDARIES ⬤⟿5 — ARTIFICIAL MARKS—SURVEYS.

Objects denoting the footsteps of the surveyor cannot be given effect in the absence of calls therefor in the field notes.

4. APPEAL AND ERROR ⬤⟿856(1) — IMPROPER THEORIES—AFFIRMANCE.

Where evidence did not support finding on which a judgment was based, it will be affirmed, where the record conclusively shows, on other theories, that the judgment rendered was the proper judgment.

5. BOUNDARIES ⬤⟿47(2)—ESTOPPEL.

Where a landowner erected a fence and, in the presence of a prospective purchaser of adjoining land, stated that he would join such prospective purchaser in building a substantial fence, where there was an opening in the fence, he was estopped as against such purchaser from denying that such fence was on the boundary.

6. TRESPASS TO TRY TITLE ⬤⟿34—PLEADING—DISCLAIMERS—CROSS-ACTIONS.

Where defendant in trespass to try title pleaded not guilty, a cross-action by him would not bring him within the terms under Rev. St. 1911, art. 7752, relating to disclaimer; allegations of the cross-petition not being a part of his answer proper.

7. ADVERSE POSSESSION ⬤⟿17—SUFFICIENCY OF POSSESSION.

The mere fencing of land for more than ten years does not show use or occupancy sufficient to give title.

8. TRESPASS TO TRY TITLE ⬤⟿38(1)—CROSS-ACTIONS—BURDEN OF PROOF.

In trespass to try title, where a defendant brings a cross-action against plaintiff and another defendant, he must affirmatively show title to land in the possession of second defendant.

9. BOUNDARIES ⬤⟿7—SURVEYS—MONUMENT.

Where a surveyor ran a line and put up a monument at a corner, the monument belongs to the system of surveys made by the surveyor.

Appeal from District Court, Potter County; Hugh L. Umphres, Judge.

Suit by E. A. Dilley against J. R. Hankins and others. Judgment for plaintiff, and the named defendant appeals. Affirmed.

H. C. Randolph, of Plainview, and Thos. F. Turner, of Amarillo, for appellant.

Culton & Taylor, of Tulia, and Madden, Trulove, Ryburn & Pipkin, of Amarillo, for appellee Dilley.

Mathes & Williams, of Plainview, for appellee Shook.

BOYCE, J. This suit was brought by E. A. Dilley against J. R. Hankins and others to determine the boundaries of survey 17, block M–11, A. B. & M., in Swisher county; plaintiff being the owner of said section 17, and the defendants being the owners of the adjoining surveys, whose lines might be affected by the location of the boundary lines of survey 17. Appellant Hankins owned sec-

tion 24 in said block, situated directly south of 17, and the judgment of the court below established the boundary line between said surveys 17 and 24, according to a survey of said lines made by Surveyor Hutchinson; the corners being evidenced by iron pipes, and said survey being referred to in the record as the "Hutchinson Iron Pipe Survey." Hankins has alone appealed from the judgment of the court, and it will not be necessary to refer to the other defendants or questions raised by them, except as to the defendant Shook, who will be mentioned hereafter.

[1] The plaintiff's petition sufficiently shows, we think, that he was claiming that the boundary line between him and the defendant Hankins should be located according to the Hutchinson iron pipe survey and supports the judgment in this respect. While plaintiff's survey is referred to in the petition as being 1,900 varas square, yet the petition refers distinctly to the lines evidenced by the iron pipe corners put in by Hutchinson, and claims such line as the boundary between sections 17 and 24. The slight excess over 1,900 varas shown to exist between these corners is not, we think, a fatal variance. We therefore overrule the first assignment.

[2-4] The Hutchinson iron pipe survey was based on certain earth mounds taken by the surveyor Hutchinson to be the corners of certain surveys along the east boundary line of M–8, and the west line of M–9, and W–1, and the court instructed the jury that if it should be found that the several lines in said blocks were located by the original surveyor with reference to said mounds, then their verdict should be for the plaintiff; otherwise, the finding should be for the defendant. It thus appears that the only issue submitted to the jury, upon which a finding in plaintiff's favor was authorized, was as to whether these mounds at the southwest corner of block W–1, and those north along the line of the old J. A. fence were original corners intended to be called for in the field notes of the several surveys in block M–8, M–9, and W–1. The charge called for a general verdict and was in effect a ruling against the plaintiff on his plea of estoppel or claim based on any other theory than that submitted, so that there could be no presumption that the issues not submitted were resolved by the court in plaintiff's favor in support of the judgment, as might be done in cases submitted on special issues where proper exception is not taken to the failure of the court to submit an issue made by the pleading and evidence. The only question, therefore, to be considered in deciding whether the second assignment is well taken, is whether the evidence is sufficient to justify the conclusion that the corners northward from the southwest corner of W–1 were original corners intended to be called for in the field notes of the several surveys in block M–8,

---

M–9, and W–1; and, if this inquiry should be determined in appellant's favor, then, whether the record conclusively establishes that the judgment was rightly entered for plaintiff on any other theory.

If the testimony of Summerfield is to be believed, these corners could not have been put in on the original survey except on the theory that McClelland and the German surveyor, after leaving Summerfield at the monument called for at the northwest corner of survey 346, block M–6, ran east some 23 miles and north some 19 miles, and then back past this north run, and met Summerfield's party in about three days after the separation putting in these corners on this run. Summerfield states that it was thought that some mistake had been made by this party during this separation, and their work was not used except for about 10 miles east from the northwest corner of said section 346, which would not be anywhere near the corners relied on by Hutchinson and referred to in the court's charge. The corners found by Hutchinson in 1890, from which he located his iron pipe corners, consisted of a line of earth mounds set at each mile, from the southwest corner of block W–1 northward for some 15 miles or more. These were the same mounds evidently referred to in the field notes of McClelland's run made in 1884. In the field notes of McClelland's run, the mounds are described as having rocks or stakes set in them and the mound at the southwest corner of block W–1 is described as a "large earth mound with cedar stake and buffalo bones on top, eighty varas west of lake." Now the field notes of surveys in blocks W–1, M–8, and M–9, of which these earth mounds were taken by Hutchinson to be the corners, simply call for mounds at such corners, with no other particular description. The record shows that the field notes of the several hundreds of surveys located in blocks M–6, M–8, M–9, M–11, and W–1, practically all call for a mound at every corner; if the call for a mound really meant a corner established on the ground, Swisher, Castro, and Randall counties would be full of original corners, and it is significant that the record does not disclose any original corners claimed to have been found on such descriptions, except along the line run by McClelland.

There is evidence in the record which is undisputed that surveyors in making and reading field notes in this country use the word "mound" simply to denote a point, indicating no established corner or actual survey, and the only reasonable conclusion to be drawn from the record is that "mound," without further particular description, was used by the surveyors and signers' of the field notes of the surveys in block M–6, M–8, M–9, M–11, and W–1, in this sense. If the earth mounds with rocks, stakes, and buffalo bones, described by McClelland, were original corners intended to be called for in field notes of the surveys in block M–8, M–9, and W–1, it is reasonable to conclude that the surveyor would have given some particular description thereof to denote that the call was for something actually on the ground, and thus distinguish it from the hundreds of calls made for mounds in the field notes of other surveys in these blocks where only a point was meant. McClelland does not describe the corners as original corners; he, or some one else locating the line for the building of the J. A. fence, may have put in these corners. But even if the testimony were sufficient to justify the conclusion that this line of mounds was put in by the surveying party which separated from Summerfield, or by some one else within the knowledge of the writers of the field notes of said surveys in blocks M–8, M–9, and W–1, we doubt whether they could be given any effect, for under the circumstances the call for a "mound" could hardly be said to denote a call for these corners, and it is well settled that objects denoting the footsteps of a surveyor cannot be given effect in the absence of calls therefor in the field notes. Hamilton v. Blackburn, 43 Tex. Civ. App. 153, 95 S. W. 1094, and authorities; Goldman v. Hadley, 122 S. W. 282; Holdsworth v. Gates, 50 Tex. Civ. App. 347, 110 S. W. 537.

These conclusions would result in a reversal of the case unless, as we have stated, the record conclusively shows that the judgment rendered was the proper judgment, although not sustained by the particular finding on which it was based. Dubinski Electric Works v. Lang Electric Co., 111 S. W. 169; Johnston v. Kleinsmith, 33 Tex. Civ. App. 236, 77 S. W. 36. Appellee claims that the judgment can be so sustained on two different theories, to wit, a location of the line by estoppel, and the true location of the line from an undisputed original corner in block M–6.

[5]. On the issue of estoppel, which was duly pleaded by plaintiff Dilley, it appears that the defendant Hankins had, in the year 1902, erected a fence on the north line of section 24, as determined by the Hutchinson pipe line corners, not knowing at that time that there was any question as to the correctness of this location. Prior to its purchase by plaintiff, Dilley, section 17 had also been fenced on the line of the Hutchinson survey, and the fence put up by Hankins on the supposed north line of section 24 was used as a common fence; one of the owners of section 24 adding some wire thereto. Hankins was, at the time of Dilley's purchase, leasing some land out of the southwest corner of section 17, and paying rent on part of said land as a part of 17, which he claimed in this suit as belonging to section 24, and, prior to the time Dilley purchased, had taken down the east end of the fence between sections 17 and 24. These were the conditions when Dil-

ley came to look at section 17 with a view to purchasing it. He had no information of any claim that there was any question as to any boundaries and thought the land was completely fenced except where the fence had been taken away from the east end of the south line. Upon this inspection trip he went to see Hankins, and the question of this fence was discussed, and Hankins himself testified that he at that time recognized the owner of section 17 as the owner of at least a part of said fence, and that he then "told Mr. Dilley that if he purchased the land we would put a good partnership fence on the line. I did at that time claim that a part of my land was in Dilley's inclosure, or at least in the inclosure of survey 17, according to the Hutchinson pipe corners. I did not tell Dilley at that time of that claim." Dilley testified, and there is nothing in the record to discredit his statement, that in purchasing the land he relied on these facts and he is corroborated by Hankins' own testimony, to which we have referred. Hankins continued to pay rent on the land as above referred to during 1913.

These facts, we think, are sufficient to establish the line on which the fence was built as a boundary by estoppel. These facts go further than presenting a case of mere silence; the erection by Hankins of the fence on the line marked by the Hutchinson iron pipes was equivalent to a representation that this was the boundary line between said surveys, and when relied upon by one purchasing the adjoining survey, with no notice of a different claim, ought to create an estoppel. Hefner v. Downing, 57 Tex. 576; Lagow v. Glover, 77 Tex. 448, 14 S. W. 143; Anderson v. Jackson, 13 S. W. 30; Schiele v. Kimball, 150 S. W. 303; 9 C. J. p. 240, § 188; 4 R. C. L. p. 131, § 72; 10 R. C. L. p. 692, § 21. In addition to the mute representations to be inferred from the building of this fence itself are the representations to be fairly implied from the actual agreement in relation to restoring the fence between sections 17 and 24, in the event section 17 should be purchased by Dilley. Dilley's testimony is to the effect that Hankins, in this conversation, stated that "whenever I wanted the fence in there he would join me and put a substantial fence back." And while, according to Dilley, the agreement was to put a partnership fence on the "line," no other reasonable conclusion can be drawn from the facts than that Dilley, at least and within the knowledge of Hankins, had in mind a repair of the fence already existing, and a rebuilding of the fence where it had been taken out. Under these circumstances, good faith and fair dealing would require that Hankins inform Dilley of his claim to land north of the fence. Not then having made such claim, we think he should be estopped from now asserting it.

[6] We would not feel justified in affirming the judgment as to Dilley on the theory of location from what is known in the record as the Dameron corner. We think under the evidence that the Dameron corner should be recognized in a proper location of these lines; whether it alone should control, or whether the line should be located, taking into connection both the Dameron corner and the established corner at the southwest corner of section 208, block 6, I. & G. N. Ry. Co. in Randall county, we need not decide. According to either location, the lines would be located far to the south of the Hutchinson pipe location and far to the west on one theory and slightly to the west on the other. So that the judgment for plaintiff covers some land in the east corner of the recovery that would not belong to section 17, on either theory of location from the Dameron corner. As the plaintiff sued in trespass to try title, and the defendant pleaded not guilty and was in actual possession of this land, the plaintiff could not therefore properly have judgment against Hankins for it. The cross-action by Hankins would not bring him within the terms of article 7752 and the decisions applying it, as the allegations of the cross-petition are not to be regarded as any part of his answer proper. Lewis v. Crouch, 85 S. W. 1010.

[7-9] The case as to the defendant B. F. Shook is different, however, and the judgment between him and Hankins can be affirmed, we think, on the theory of the Dameron location. Shook was the owner of section 16, located west of 17, and was a defendant in the suit brought by Dilley. He also was claiming under the Hutchinson iron pipe location, and the court gave him a peremptory instruction on his plea of limitations. The plaintiff, Dilley, does not complain of this instruction, but appellant Hankins filed a cross-action in which he set out specifically that he was an owner of 215 acres of land, a part of section 24, and sought a recovery thereof against the plaintiff and his codefendants, and, as we understand the record, a small part of land off the west end of this tract so claimed in the cross-action lies within the boundaries of section 16, as located by the Hutchinson iron pipe corners; so that, if Hankins had shown himself entitled to recover this 215 acres and the evidence did not warrant the finding on limitations, appellant might complain. We are inclined to the opinion that the defendant Shook failed to make out his case under his plea of limitations, in that, while the evidence may have warranted the conclusion that the land had been fenced for more than 10 years, it did not show any use or occupancy thereof other than the mere fencing during such time. But as to Shook, appellant Hankins occupied the position of plaintiff, and, if he did not affirmatively show title to the 215 acres of land claimed in his cross-petition, he could not recover. Plaintiff's theory was that the surveys in block M-11

should be built up alone by course and distance from corners along the south line of block 6, I. & G. N. Ry. Co. in Randall county, called for by the field notes of survey M-9. The field notes of the surveys in M-8, M-9, and M-11, all call to tie to each other. But block M-11 also calls for corners of surveys in block M-6, and the testimony shows that all these blocks were built up from a line run by Summerfield, during which run he put in the monument known as the Dameron corner at the northwest corner of section 346, block M-6. This corner would therefore belong to this system of surveys. McCormack v. Crawford, 181 S. W. 485. And there is nothing in the record that would justify us in disregarding this corner entirely and building up block M-11 alone from the corners in block 6 of the I. & G. N. survey, which apparently belongs to a different system of surveys. Under the facts disclosed by the record, the Dameron corner would at least have equal importance with the Randall county corner in the location of these surveys. Location on either the Dameron corner or the Dameron corner in connection with the corners of block 6 of the I. & G. N. surveys would locate section 24 entirely to the south of any land awarded Shook on his plea of limitations, and, since plaintiff did not sustain any theory on which he could recover anything from Shook on his cross-petition, we think the judgment as to Shook should also be affirmed.

We have not attempted to set out the facts in detail, but our purpose has been only to make such statement as that our holding may be understood by the parties in light of the record.

Affirmed.