A. R. COX et al., Appellants,

v.

E. W. OLIVARD, Jr., et ux., Appellees.

No. 17888.

Court of Civil Appeals of Texas, Dallas.

May 18, 1972.

Rehearing Denied June 15, 1972.

Olan R. Van Zandt, Sherman, for appellants.

Charles B. Robinson, Sherman, for appellees.

CLAUDE WILLIAMS, Chief Justice.

Appellants sued appellees in trespass to try title in which they sought title and possession of 5.53 acres of land in Grayson County, Texas. Appellants base their claim of title exclusively upon the ten and twenty-five year statutes of limitations (Article 5510 and 5519, Vernon's Tex.Rev. Civ.Stat.Ann.).

Appellees answered with a general denial.

The case was submitted to the court, without a jury. We summarize the material testimony. The record title to the disputed 5.53 acres of land is admitted to be in appellees. Both appellants and appellees ·owned tracts of land which were contiguous. Appellees' land is situated to the east and appellants' land to the west with the disputed 5.53 acres near the middle of the two tracts. The area surrounding the disputed land was used by the respective parties primarily for pasture and for grazing of livestock. The land in question is described by all parties and witnesses as being rough, uneven, irregular, and cov-

ered in heavy underbrush and trees. A considerable part of the land lay within the bed and along the steep banks of a meandering creek, known as Jerden Creek, which runs in a general north and south direction. The west boundary line of appellees' property, as described in the warranty deed to appellees, extended along the bed of Jerden Creek and in places extended slightly west of the creek.

Appellee E. W. Olivard, Jr. testified that when he acquired the property in 1960 the remains of an old fence existed along portions of his west "deed line" and that a few fence posts along the old fence line were still evident. He further testified that even though he knew that his west line was the creek, and a part west of the creek, that some years previously his west fence had been relocated on the east bank of the creek. He assigned three reasons for the relocation of the fence line: (1) for the protection of his cattle since his pasture, extending westerly towards the creek, dropped off sharply into the bed of the creek and his cattle on occasions had been injured after losing their footing and falling down the steep east bank of the creek; (2) that the land now in dispute was subject to overflow and the fence had washed away on a number of occasions when it was situated further to the west; and (3) that the fence could not be maintained further to the west even in the absence of overflow because of the roughness of the terrain and the steepness of the east and west banks of Jerden Creek. He testified that the fence could not practicably be maintained on his west deed line due to the nature of the terrain and that he had been required on at least one other occasion to relocate the fence even further to the east in order to maintain it during the rainy seasons of the year.

Olivard testified that the fence belonged to him though having been constructed originally by his predecessors in title, and that he had always maintained it. He said that, to his knowledge, appellant Cox had never maintained the fence. There was testimony from appellant Cox and his witnesses to the effect that the fence had been repaired from time to time by Cox or at his direction. Olivard testified that he knew the acreage west to the fence line and extending down to the creek to his deed line belonged to him but that he had been unable to use it economically for agricultural purposes or for grazing cattle due to the difficult nature of the terrain at and near the creek. Olivard said that the Cox's cattle occasionally roamed at will in his pasture so that when he occasionally saw other cattle in the area in dispute he had no reason to believe that Cox was claiming said acreage adversely to him. He also testified that up to the time the lawsuit had been filed he had received no actual or implied notice from Cox concerning his adverse claim to the land in dispute.

Appellant A. R. Cox testified that he purchased his farm in 1948 and that the deed recites 288 acres of land, "more or less." In July, 1971, in contemplation of sale of the farm, Cox employed E. M. Busby, a surveyor, who surveyed the land on the ground and under fence. Busby testified that he found 292.48 acres of land which included the 288 acres under the Cox deed and the 5.53 acres of land in controversy. Busby said that the 5.53 acres of land was within the fence of the Cox land; that the fence was a substantial barbed wire fence capable of turning cattle and showed evidence of having been there for many years.

Cox testified that he and his tenants, as well as his neighbors on the east, had maintained the fence and repaired the same from time to time and that for more than ten years he and his children, as well as his tenants, had open, adverse and peaceable possession of the 5.53 acres of land and had used same for grazing purposes. There was also testimony from a tenant, B. T. Worsham, and Weston Cox, son of A. R. Cox, who said that Cox and his family had claimed and used the disputed acreage for grazing purposes for more than ten

years preceding the institution of the lawsuit.

The trial court rendered judgment that plaintiffs had failed to carry their burden of proof to establish title to the disputed acreage and that title and possession of same remains vested in Olivard and wife.

The trial court, complying with request of appellants, filed findings of fact and conclusions of law. The court found (1) that for more than ten years prior to the filing of the suit the property in question had been within the boundaries of the deed constituting the record title of appellees; (2) that during all of said period of time the disputed property had been in an enclosure with contiguous property owned by appellants; (3) that a substantial creek winds across the boundary lines between the contiguous farms of appellants and appellees, same constituting the boundary line as defined in the record title of the respective parties; (4) that the course of such creek together with its magnitude has at all times rendered the construction of a fence on such boundary line highly impractical; (5) that for said reason many years ago the fence was constructed so as to enclose the disputed land within the boundaries of contiguous owners rather than within the boundaries rightfully entitled to the property by virtue of the deed; and (6) the use of the property by appellants had been limited to some grazing. The court concluded (1) that under the state of the record here the possession and use of the property by the appellants has not been sufficient to mature title by limitation to the property in dispute; (2) when the terrain along the boundary of a contiguous property renders impractical the construction of a fence on the true boundary line, the location of the fence off of such boundary line will not support a claim for title by limitation against the landowner on whose land the fence is located in the absence of unequivocal notice to the landowner adversely affected that his neighbor is asserting title to the property in question; and (3) under such circumstances

the cultivation or grazing of the disputed property is not sufficient.

Appellants attack the judgment in fourteen points of error. The seventh point has been abandoned. Many of the points are too general in nature to be considered and some have not been briefed. A careful analysis of appellants' argument under all of the points asserted reveals that they rely upon three points: (1) that the judgment rendered is not in conformity with the pleadings; (2) there is no evidence to support the trial court's findings of fact and conclusions of law; and (3) the evidence is insufficient to support the trial court's findings of fact and conclusions of law.

■ The essence of appellants' first contention is that since appellees did not plead "not guilty" pursuant to Rule 788, Vernon's Texas Rules of Civil Procedure, but merely pled a general denial, that such pleading was insufficient, as a matter of law, to permit the appellees to do more than affirmatively prove that the limitation period relied upon by appellants had been interrupted and since this had not been accomplished the trial court could not legally render the judgment in favor of appellees. We cannot agree with appellants.

■ Rule 788, T.R.C.P., provides that a defendant *may* file a plea of not guilty. Our courts have repeatedly held that a defendant in a trespass to try title action is not required to file a plea of "not guilty" but that a plea of general denial has the effect of putting the plaintiff upon proof of his right to recover the land in controversy. The plea of "not guilty" in a trespass to try title suit was first provided for by the Act of Congress of the Republic of Texas in 1844. Nine years after the passage of such act the Supreme Court of Texas in Harlan's Heirs v. Haynie, 9 Tex. 459 (1853), held that under a general denial the defendant could attack the sufficiency of plaintiff's title. An excellent discussion and review of the more recent authorities holding that a general denial is suffi-

cient is found in *Brinkley v. Brinkley*, 381 S.W.2d 725 (Tex.Civ.App., Houston 1964).

As we view the record the principal points relied upon by appellants concern the question of whether appellants' use and occupancy of the disputed acreage was to such an extent and of such a nature as to put the appellees on notice of appellants' adverse claim to such property and thereby to cause the statute of limitations to ripen in appellants' favor. The trial court concluded that the possession and use of the property by the appellants had not been sufficient to mature title by limitation. Appellants contend that there was no evidence or either insufficient evidence to support this finding and conclusion on the part of the trial court. We have carefully examined this entire record in the view of appellants' "no evidence" and "insufficient evidence" points and having done so we conclude that the trial court's judgment is amply supported by the facts and therefore overrule appellants' contentions.

■ It is quite obvious from this record that the actual location of the fence is the fact which precipitated the controversy between the adjacent landowners. The record is quite clear that it was impossible or highly impracticable for appellees to either construct a new fence or maintain the old fence which had originally divided the properties so that the disputed area would have been within the fenced area of appellees' property. This condition was brought about by the nature of the terrain. This resulted in the obvious necessity of placing the fence line within the property owned by appellees thereby leaving the 5.53 acres outside of such fence line. This situation resulted in a condition which permitted occasional grazing by cattle owned by appellants.

The matter of the location of the fence, under the circumstances here presented, has been discussed by other courts in similar situations and in cases involving the application of the statutes of limitations. Our Supreme Court in *Orsborn v. Deep Rock Oil Corp.*, 153 Tex. 281, 267 S.W.2d 781 (1954), had before it a case involving a disputed tract of land which had been casually or incidentally enclosed with other land. The court held that incidental enclosure and occasional grazing of the disputed tract by cattle straying from titled land was not enough to amount to adverse possession so as to support the statute of limitations.

In 1945 the Supreme Court in *McCall v. Grogan-Cochran Lumber Co.*, 143 Tex. 490, 186 S.W.2d 677, said that in order to acquire title by adverse possession to additional land outside one's conveyance, the claimant must exercise actual possession of such property in such a manner as will give notice of an exclusive adverse possession. The Court of Civil Appeals at Beaumont in 1952 in *Ogletree v. Evans*, 248 S.W.2d 804, held that the question of whether an enclosed tract of grazing land was in the exclusive possession of the claimant for the purpose of his acquiring title thereto was a question for the jury to determine under all of the evidence. Again in 1956 the Court of Civil Appeals at Galveston in *Wynn v. Mendoza*, 287 S.W.2d 217, writ refused n.r.e., held that the question of whether or not the occasional grazing of cattle on disputed property was sufficient to show adverse and hostile claim thereto, was for the court or jury to determine.

■ The mere fencing of land for more than ten years does not, in itself, demonstrate use or occupancy of the land sufficient to give title to an adverse claimant. Such claimant must come forward with clear and satisfactory proof of open and notorious claim and use of the property so as to justify the claim of title by limitations. *Texas & New Orleans R. Co. v. Schoenfeld*, 136 Tex. 173, 146 S.W.2d 724 (1941); *Hankins v. Dilley*, 206 S.W. 549 (Tex.Civ.App., Amarillo 1918); *Carter & Brother v. Ruth*, 275 S.W.2d 126 (Tex. Civ.App., Beaumont 1955); *Marion County v. Sparks*, 112 S.W.2d 798 (Tex.Civ. App., El Paso 1938, writ dism'd); and *West Production Co. v. Kahanek*, 132 Tex.

153, 121 S.W.2d 328 (Tex.Comm'n App. 1938).

The record clearly demonstrates that appellants' testimony concerning use of the disputed land is not of such character as would compel the trial court to render judgment in favor of appellants. Much of the testimony is conflicting with respect to the use and occupancy of the land by appellants. We hold that there was evidence to support the trial court's findings and conclusions of law and that said findings are not contrary to the great weight and preponderance of the evidence.

We have carefully considered all of appellants' points of error and the same are overruled. The judgment of the trial court is affirmed.

Affirmed.