Terry Mack STRONG, Appellant,

v.

The STATE of Texas, Appellee.

No. 12–88–00053–CR.

Court of Appeals of Texas,
Tyler.

Aug. 31, 1990.

Rehearing Overruled Jan. 30, 1991.

numerous law enforcement agencies were involved in a drug investigation conducted in Longview in 1986. As part of the investigation, co-defendants John and Judy Lindley's apartment was under surveillance and the apartment telephone was wiretapped. After obtaining a search warrant, the officers searched the Lindley's apartment and a car they were using. Over three pounds of cocaine, drug paraphernalia, weapons, and notebooks evidencing drug transactions were recovered in the search. Appellant was indicted with thirty-two others for the offense of engaging in organized criminal activity. The State alleged that appellant, with the intent to participate in a combination, conspired to commit delivery of cocaine.

■ In his first point of error, Strong contends the organized crime statute is unconstitutionally vague because it does not define the word "collaborate." Strong relies on both the state and federal constitutions. TEX.PENAL CODE § 71.01(a) (1989) [1] provided: "combination means five or more persons who collaborate in carrying on criminal activities, although; (1) participants may not know each other's identity; (2) membership in the combination may change from time to time; and (3) participants may stand in a wholesaler-retailer or other arm's-length relationship in illicit distribution operations."

Guy Harrison, Longview, for appellant.

C. Patrice Savage, David E. Moore, Longview, for appellee.

BILL BASS, Justice.

A jury found appellant guilty of the offense of engaging in organized criminal activity and assessed punishment at forty years confinement in the Texas Department of Corrections. Appellant brings eleven points of error.

Appellant was tried with seven co-defendants. The evidence at trial showed that

Strong contends the statute is vague because it states both that five persons or more must collaborate and that the people can collaborate without knowing each other. He argues that the term collaborate and the statement that they do not have to know each other create "a total inconsistency."

■ A statute is void for vagueness if it "fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute, or if it encourages arbitrary and erratic arrests and convictions." *Adley v. State*, 718

1. Acts, 65th Leg., ch. 346, § 1, 1977 Tex.Gen. & Spec.Laws 922, *amended by* Acts, 71st Leg., ch. 782, § 1, Tex.Gen. & Spec.Laws 3468.

S.W.2d 682 (Tex.Cr.App.1985) (citations omitted).

When a statute is challenged as being unconstitutionally vague, and no First Amendment right is involved, the reviewing court need only determine whether the statute is impermissibly vague as applied to the defendant's specific conduct, rather than consider whether the statute is unconstitutionally vague as applied to the conduct of others. *Bynum v. State*, 767 S.W.2d 769, 774 (Tex.Cr.App.1989). Therefore, when the defendant challenges the statute he must show that in its operation the statute is unconstitutional to him personally; that it may be unconstitutional to others is not sufficient.

Appellant's argument questions how one can collaborate with other people without knowing their identity. Yet appellant does not assert that he did not know the identity of the other members of the combination. It is questionable whether appellant has even shown how the statute would be unconstitutional to him since his argument is phrased generally.

A statute is not unconstitutionally vague merely because the words or terms used are not specifically defined. *Bynum*, 767 S.W.2d at 774. It is only unconstitutionally vague if persons of common intelligence must necessarily guess at its meaning. *Ahearn v. State*, 588 S.W.2d 327, 338 (Tex.Cr.App.1979). When words are not defined in the code, they are "to be taken and understood in their usual acceptation in common language." TEX.CODE CRIM.P. art. 3.01 (Vernon 1977). The court in *Lucario v. State*, 677 S.W.2d 693, 699 (Tex.App.— Houston [1st Dist.] 1984, no pet.), held that the phrase "collaborate in carrying on" as used in the Texas organized crime statute was not unconstitutional for vagueness, recognizing that the ordinary meaning of the term "collaborate" is "to work together."

The challenged statutory language is not inconsistent because it is possible to work jointly in carrying on criminal activities without knowing the identity of each individual participating. Appellant's challenge that the statute is unconstitutionally vague is overruled.

In his second point of error, appellant contends the trial court erred by not granting his motion to sever. A trial court has discretion to try two or more defendants jointly, if they were jointly or separately indicted for the same offense or for any offense growing out of the same transaction. TEX.CODE CRIM.PROC.ANN. art. 36.09 (Vernon 1981). However, if it is made known to the court that there exists an admissible previous conviction against one defendant, or that a joint trial would prejudice either defendant, then upon timely motion the trial court shall order a severance as to the defendant whose joint trial could prejudice the other defendant. *Id.*

Strong acknowledges that the prior convictions of John and Judy Lindley were not final, and therefore were inadmissible. But he contends that the pre-trial publicity concerning John and Judy Lindley's previous trials for delivery of cocaine prejudiced his rights. Strong provided evidence of the pretrial publicity at the pre-trial hearing. He also relied on a previous discussion by the trial court in a hearing where the State's failure to provide defense counsel with exhibits was at issue. At the hearing, the trial court said certain exhibits were widely known from prior court proceedings. Given the context in which the comment was uttered, it did not relate to the knowledge of the public or prospective jurors, but only to that of the defendants or their counsel. And although there was pre-trial publicity about the Lindley's prior convictions, any possible harm was eliminated by thorough questioning during the voir dire examination. Appellant has failed to show clear prejudice resulting from the trial court's denial of his motion to sever.

Strong also contends that the severance should have been granted because he was denied the right to confrontation when John and Judy Lindley claimed their Fifth Amendment privilege not to testify. Appellant has waived this as a ground for severance in that he failed to present it as a ground for severance to the trial court.

In his third point of error, Strong contends he was denied due process because of the trial court's conduct. Specifically, he complains of four instances of alleged misconduct.

(1) *Voir Dire.* Strong contends the trial court badgered defense counsel and limited his defense counsel's voir dire, creating an atmosphere in which he did not receive a fair trial. He specifically refers us to the part of the record where Strong's counsel began to explain the jury's oath and discuss the jury's duty to consider the full range of punishment. While Strong's counsel lectured the jury, the trial court interrupted several times urging counsel to "couch your question" and proceed. When counsel attempted to ask, row by row, whether or not the venirepersons could follow the law, the court interrupted stating that the inquiry was repetitive since it was the third time this area had been covered. The trial court told counsel to ask questions that had not already been asked. Counsel repeated his question and the judge then recessed for the day. On the next day counsel was allowed to proceed with his voir dire without interruption from the trial court.

The conduct of voir dire examination rests within the sound discretion of the trial court. *Bridge v. State*, 726 S.W.2d 558, 564 (Tex.Cr.App.1986). The trial court has not only the right, but also the duty to confine examination of prospective jurors within reasonable limits. *De La Rosa v. State*, 414 S.W.2d 668, 672 (Tex.Cr. App.1967); *Oliver v. State*, 739 S.W.2d 656 (Tex.App.—Dallas 1987, pet. ref'd). Time restraints on voir dire are a legitimate concern of the trial court. *Smith v. State*, 703 S.W.2d 641, 645 (Tex.Cr.App.1985) (citations omitted). In *Smith*, the court stated:

> Voir dire examination can become the lengthiest part of the proceeding. To curb some prolixity, it is recognized that courts need have a discretionary area within which the examination might be reasonably limited. Otherwise, a trial court is forced to allow a defendant to ask an endless number of questions, so long as the questions show some relevance to the issues raised at the trial. Therefore, a trial judge can exercise his discretion to prevent an improperly phrased question from being asked when it threatens to duplicate earlier questions, or presents so broad a question as to constitute a global fishing expedition.

In the instant case, each appellant's attorney was allowed the opportunity to voir dire the prospective jurors. Prior to Strong's counsel's voir dire, Judy Lindley's defense counsel, John Lindley's defense counsel, and the prosecutor each explained the range of punishment and inquired whether the prospective jurors could consider the full range of punishment. Although the trial court's manner may have been brusque, his comments requesting defense counsel to refrain from speechmaking and repetition did not amount to an abuse of discretion and a denial of a fair trial.

(2) *Final Argument.* Strong also contends that a remark made by the prosecutor during final argument was a comment on co-defendant Hudson's failure to testify, depriving Strong of a fair trial. This argument is without merit. First, even if the statement was a comment on the failure to testify, it was a comment on *Hudson's* failure to testify and did not deprive Strong of a fair trial. Second, the prosecutor's statement was not a comment on Hudson's failure to testify. During the State's final argument, the prosecutor recalled the evidence concerning a phone conversation between John Lindley and Chris Hudson where Hudson offered to sell a weapon to John Lindley for "two-and-a-half." John questioned Hudson whether they were talking about dollars. The prosecutor stated the following:

> I've got a question for you at that point. If they're simply swapping money for guns, if that's what we're doing, then why would he have to ask that kind of question, two-and-a-half, are we talking dollars? It's because he doesn't know if Chris Hudson is talking in terms of dollars or in terms of grams, and that's why he had to ask that question. And Mr. Hudson in this same conversation—he's

looked awful innocent sitting over there by his counsel in his sweaters and everything. He looks like a nice clean cut— (interrupted by objections that the statement was a comment on the failure to testify).

▉▉▉▉▉ An impermissible comment on the accused's failure to testify is made when the language used is either manifestly intended, or when the language is of such a character that the jury would naturally and necessarily take it as a comment on the failure to testify. *Losada v. State*, 721 S.W.2d 305, 313 (Tex.Cr.App.1986). The language must do more than merely imply or allude to the failure to testify; it must necessarily refer to the accused's failure to testify. *McKay v. State*, 707 S.W.2d 23, 37 (Tex.Cr.App.1985), *cert. denied*, 479 U.S. 871, 107 S.Ct. 239, 93 L.Ed.2d 164 (1986). Comments that refer to non-testimonial ordinary courtroom demeanor may be an indirect comment on the defendant's failure to testify requiring reversal. However, in the instant case, the prosecutor's remark was not such a comment. *Cf. Dickinson v. State*, 685 S.W.2d 320, 325 (Tex. Cr.App.1984) (comments that non-testifying defendant failed to express in the courtroom "remorse," "pity," or "shame" towards or for the victim); *Mason v. State*, 668 S.W.2d 726 (Tex.App.—Houston [14th Dist.] 1984, pet. ref'd) (comment referring to defendant sitting quietly during trial).

The prosecutor's statement did not necessarily refer to Hudson's failure to testify, and was not of such a nature that the jury would necessarily take it as a comment on Hudson's failure to testify.

▉▉▉ (3) *Cross–Examination.* Strong also contends that, during co-defendant Gibbons' cross-examination of Ranger Akin, the trial court commented on Gibbons' failure to testify, denying Strong of a fair trial. This argument is without merit because the statement was made in reference only to co-defendant Gibbons and was not even an allusion to Strong.

While Ranger Akin was being cross-examined, Gibbons' attorney asked him, "Were you aware that Mike Gibbons had a cocaine habit of $500.00 per day at the time you made these arrests?" The State objected that defense counsel was testifying. The trial court sustained the objection. Defense counsel said, "I can't ask him if he knew that, your Honor?" The court replied, "If you'll lay the predicate for it. Are you telling the Court you're going to introduce that testimony to that effect?" Defense counsel replied that he would like to ask the witness the question. The court then had the jury retire to the jury room. When the jury returned, the court gave an instruction that the remark made by the court should not be interpreted as an opinion by the court as to what any defendant should or should not present.

▉▉▉ The court's remark is not even an indirect comment on Gibbons' failure to testify. Moreover, the comment occurred before the State closed its case and the appellants rested their case. A statement containing no direct allusion to a failure to testify, and made prior to the time defendant rests, cannot refer to a failure to testify which has not yet occurred. *McCarron v. State*, 605 S.W.2d 589, 595 (Tex.Cr.App.1980).

▉▉▉ (4) *Cross–Examination.* Strong also complains that co-defendant Hammock's cross-examination was impermissibly limited, depriving Strong of a fair trial. After examining the record, we conclude that the cross-examination was terminated by defense counsel after assurances to the trial court he had no further questions. It is apparent from the record, that the court gave defense counsel ample opportunity for continued cross-examination. Even assuming error, which we do not, it did not deny Strong of a fair trial, because any limitation of Hammock's cross-examination did not affect Strong's right to cross-examination.

▉▉▉ In his fourth point of error, Strong contends the trial court erred by allowing the use of charts during the presentation of evidence and the jury argument. As the evidence was presented, the State made notations on charts under each defendant's name summarizing phone conversations, notebook entries, or surveillance observa-

tions. The State referred to the charts and displayed them during jury argument. However, they were not admitted as evidence.

Strong's complaint at trial, and on appeal, is that the trial court erred in permitting the prosecutor to take statements from the taped evidence as it was being presented in court and summarizing the evidence on the chart because it allowed the State to create evidence in front of the jury in violation of TEX.R.CRIM.EVID. 106 and 107. Rule 106 provides:

> When a writing or recorded statement or part thereof is introduced by a party, an adverse party may at that time introduce any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it. 'Writing or recorded statement' includes depositions.

Rule 107 provides:

> When part of an act, declaration, conversation, writing or recorded statement is given in evidence by one party, the whole on the same subject may be inquired into by the other, as when a letter is read, all letters on the same subject between the same parties may be given. When a detailed act, declaration, conversation, writing or recorded statement is given in evidence, any other act, declaration, writing or recorded statement which is necessary to make it fully understood or to explain the same may also be given in evidence. 'Writing or recorded statement' includes depositions.

We fail to see the relevance of either of these rules. There was no attempt by Strong to introduce the remainder of the recorded conversations.

■ Strong also complains that the charts should not have been used during jury argument because the prosecutor created evidence. Strong relies on *Ward v. State*, 474 S.W.2d 471 (Tex.Cr.App.1971), and *Lookabaugh v. State*, 352 S.W.2d 279 (Tex.Cr.App.1961). In both those cases, the prosecutors' arguments referred to something outside the record. In this case, the charts used were summaries of the evidence presented at trial. No objection was made during jury argument that the charts contained evidence outside the record. The trial court has the discretion to permit an attorney to use visual aids, including charts, in summarizing the evidence. *Bobo v. State*, 757 S.W.2d 58, 64 (Tex.App.—Houston [14th Dist.] 1988, pet. ref'd), *cert. denied*, 490 U.S. 1066, 109 S.Ct. 2066, 104 L.Ed.2d 631 (1989); *Vera v. State*, 709 S.W.2d 681, 687 (Tex.App.—San Antonio 1986, pet. ref'd). Considering the amount of evidence and the length of the testimony, permitting the State's use of visual aids in the form of charts during jury argument was not an abuse of discretion. Appellant's fourth point of error is overruled.

■ In his fifth point of error, appellant contends the court erred by allowing the introduction of extraneous offenses at the guilt/innocence stage of the trial. Over appellant's objection, the trial court allowed the State to introduce in evidence a spiral notebook that documented numerous drug transactions between Strong and the Lindleys, not only during the time of the organized criminal activity alleged in the indictment, but also during the preceding months.

In his brief, appellant relies on TEX.CODE CRIM.PROC. art. 37.07 § 3; however, this article does not support his position. Section 3 pertains to admissibility of evidence at the punishment stage and specifically states that it does not affect admissibility of extraneous offenses on the question of guilt or innocence. Although not cited, appellant attempts to invoke TEX.R.CRIM.EVID. 404(b) which provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided, upon timely request by the accused, reasonable notice is given in advance of trial of intent to introduce in the State's case in chief such

evidence other than that arising in the same transaction.

The trial court's duty when faced with such an objection is to determine whether the evidence is relevant to an issue other than character, and whether the negative attributes of the evidence substantially outweigh any probative value. *Montgomery v. State, slip op.,* (Nos. 1090–88 and 1091–88, May 30, 1990) (reh'g granted); *see also Huddleston v. United States,* 485 U.S. 681, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988). On appeal, we are to give considerable deference to the trial court's decision regarding the admissibility of evidence and reverse only if the trial court abused its discretion. *Montgomery, slip op.,* (Nos. 1090–88 and 1091–88, May 30, 1990) (reh'g granted).

We agree with the trial court's determination that the evidence was relevant to prove Strong's intent to establish, maintain, or participate in a combination and to conspire to commit the offense of unlawful delivery of cocaine. In determining whether to admit the testimony, the trial court could have considered the inherently circumstantial nature of the evidence tending to prove that appellant had the requisite intent. We hold that the trial court did not abuse its discretion in admitting the evidence. Point of error five is overruled.

In point of error six, appellant contends that Exhibit 70, the spiral notebook which contained a tab with "Terry" written on it, was inadmissible because the tab was not properly authenticated as required under TEX.R.CRIM.EVID. 901.

An expert witness testified that the entries made in Exhibit 70 were written by Judy Lindley. However, he stated that although the handwriting on the tabs was consistent with Judy Lindley's handwriting, he was unable to make a definite determination of whose handwriting was on the tabs. Rule 901 provides that a sufficient manner of authentication is "comparison by the *trier of fact* or by expert witness *with specimens which have been found by the court to be genuine.*" The trial court admitted, without objection, Exhibit 104, a handwriting sample of Judy Lindley comprised of two pages of text containing various letter forms and characters. After defense counsel objected to admission of Exhibit 70 on the ground the tab was unauthenticated, the trial court overruled the objection stating that the jury could compare the handwriting on the tab with the handwriting exemplar. Since the jury had the opportunity to compare the tabs with the exemplar in evidence which the trial court found to be genuine, no error is shown in admitting the letter. *See Ex parte Watson,* 606 S.W.2d 902, 905 (Tex. Cr.App.1980) (interpreting the prior law regarding authentication by the trier of fact, which is consistent with rule 901). Appellant's point of error six is overruled.

In point of error seven, appellant contends the trial court erred in allowing his oral statements to be admitted because the voice identification of those statements was allowed into evidence without a *Jackson v. Denno* hearing.

Strong argues the trial court erred in denying him a *Jackson v. Denno* hearing which he had requested to determine whether his statements that were used as voice samples to identify his wiretap statements were voluntary, and whether he was denied his right to counsel under the Sixth Amendment. A state witness testified that he could identify Strong's voice coming from the wiretap evidence because he had the opportunity to hear Strong speak while Strong was in custody. The contents of the statements were not admitted during trial, so the voluntariness of the statements was not at issue.

It is unclear at what time the appellant's statements were made, although the witness said it was while appellant was in custody. If they were made prior to "initiation of judicial adversary proceedings," no right to counsel attached. *See Moran v. Burbine,* 475 U.S. 412, 106 S.Ct. 1135, 1145, 89 L.Ed.2d 410 (1985). If they were made after initiation of adversary proceedings, he was not denied the right to counsel because the taking of a voice exemplar is not a "critical stage of the criminal proceedings" entitling the accused to

the assistance of counsel. *See Gilbert v. California,* 388 U.S. 263, 87 S.Ct. 1951, 1953–54 (1967) (taking of exemplars that are not testimonial are not a "critical stage" of the criminal proceedings entitling defendant to assistance of counsel under Sixth Amendment); *Jasper v. State,* 649 S.W.2d 330 (Tex.App.—Tyler 1983, no pet.) (absence of counsel when witness took fingerprints of defendant after proceedings were initiated did not deprive defendant of right to counsel under Sixth Amendment because taking of fingerprints was not a critical stage of the proceedings). Appellant's seventh point of error is overruled.

 By his eighth point of error, Strong complains that Les Ferguson's voice identification of Strong was inadmissible because the statements relied on by Ferguson to make the voice identification were not submitted in accordance with a pre-trial discovery order. At the time Ferguson made his voice identification of Strong, appellant did not make this objection. It was not until after fourteen witnesses had testified that this objection was raised. In fact, Ferguson had already taken the stand and discussed the content of phone conversations he had monitored involving Strong as a party before this objection was raised. An objection must be raised at the earliest opportunity available to preserve error for review. *Marini v. State,* 593 S.W.2d 709, 714 (Tex.Cr.App. 1980). Error, if any, was not properly preserved. Point of error eight is overruled.

 In his ninth point of error, Strong contends the evidence was insufficient to prove he intended to participate in a combination. The standard for review for both direct and circumstantial evidence is whether, in viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Marroquin v. State,* 746 S.W.2d 747 (Tex.Cr.App.1988). To be guilty of the offense of organized criminal activity, as the statute was written at the time of the offense, the actor must have committed, or conspired to commit, one of the enumerated crimes (i.e., delivery of con-

trolled substance) with the specific intent of participating in a criminal combination of at least five persons. Tex.Penal Code 71.02 (1989); *Barber v. State,* 764 S.W.2d 232, 235 (Tex.Cr.App.1988). A "combination" is defined as follows:

> [F]ive or more persons who collaborate in carrying on criminal activities, although:
> (1) participants may not know each other's identity;
> (2) membership in the combination may change from time to time; and
> (3) participants may stand in a wholesaler-retailer or other arm's-length relationship in illicit distribution operations.

Tex.Penal Code § 71.01. "Conspires to commit" is defined as follows:

> [A] person agrees with one or more persons that they or one or more of them engage in conduct that would constitute the offense and that person and one or more of them perform an overt act in pursuance of the agreement. An agreement constituting conspiring to commit may be inferred from the acts of the parties.

Tex.Penal Code § 71.01.

The charge to the jury read, in pertinent part, as follows:

> [O]n or about the 3rd day of September, 1986, continuing until on or about the 12th day of September, 1986, ... Terry Mack Strong, did then and there with the intent to establish, maintain or participate in a combination or the profits of a combination consisting of four or more of the following, in addition to Terry Mack Strong, to wit: John Lindley, Judy Lindley, James Hammock, Chris Hudson, Mike Gibbons, Cameron Dale Brooks, Kathryn Tillis Dobbins, ... Ricky Dollahite, Marilyn Barnes ... John LaRoux.... Rexanne Garlington, David Willis, Bonnard Deardorff, Jr., ... Robert Eastham, knowingly or intentionally conspire to commit the offense of unlawful delivery of ... cocaine and did then and there agree with John Lindley, Judy Lindley, James Hammock, Mike Gibbons, Chris Hudson, Cameron Dale Brooks, Kathryn Tillis Dobbins, Ronald Parrish or Robert

Eastham to engage in conduct constituting said offense ... and in furtherance thereof Terry Mack Strong performed [certain overt acts].

There was evidence from which the jury could conclude appellant intended to participate in the combination.

The evidence, viewed in the light most favorable to the verdict, shows that John and Judy Lindley operated a drug-selling operation out of their apartment. There was testimony that appellant and the co-defendants in the trial purchased such large amounts of cocaine that the jury might reasonably conclude that the cocaine was purchased not just for personal use but also for resale. There was substantial evidence that Strong obtained financing for his drug transactions from the ringleaders, John and Judy Lindley. Strong received the drugs from the Lindleys and paid his debts in installments.

The record also showed that he acted in conjunction with other members of the combination in trying to recover money. In one phone conversation, Strong explained to John that he knew "a guy at Joe's who owes us some ... money." Another time, while Strong was fretting about his problems with "Rick," John offered to provide him "back-up." Strong also explained to John that he was trying to recover the money but that he was "missing one person."

There was also evidence that Strong collaborated with members of the combination. He was in contact with John and Judy describing his whereabouts and progress made in trying to recover money or conclude a drug deal. In another conversation, Hammock related to John that Strong had called and said he was coming over and that Hammock had better have the money or the drugs. Hammock explained to John that it would not be a problem because he came up with the money. At that point, John told Hammock to hold on to it until he could get there. John arrived shortly thereafter. In another phone conversation, Strong described to Judy the trouble he had getting something, presumably money or drugs, from a particular couple. He related that Hammock had just arrived and that he was going to get Hammock to help him.

After reviewing all the evidence in the light most favorable to the verdict, we conclude the jury could have found beyond a reasonable doubt that appellant intended to participate in a combination as alleged in the indictment. Appellant's ninth point of error is overruled.

■ In his tenth point of error, Strong complains that the trial court refused to give his requested instruction on specific intent. The state contends the trial court did not commit reversible error because the charge requested is substantially the same as the charge given.

The appellant requested the following specific intent instruction:

Our law provides that to be guilty of engaging in organized crime as alleged in the indictment, the defendant must, with the intent to establish, maintain or participate in a combination or in the profits of a combination, commit the offense of conspiracy to deliver a controlled substance, to wit, cocaine. If you believe from the evidence beyond a reasonable doubt that defendant committed the offense of conspiracy to distribute a controlled substance, to wit, cocaine, but you have a reasonable doubt as to whether at the time of the commission of the offense he intended to establish, maintain or participate in a combination or in the profits of a combination, you will acquit the defendant of engaging in organized crime.

The charge given to the jury includes the following:

Our law provides that a person commits an offense if, with the intent to establish, maintain, or participate in a combination or in the profits of a combination, such person knowingly or intentionally conspires to commit unlawful delivery of a controlled substance....

Before you would be warranted in convicting any one of the defendants for engaging in organized crime as alleged

you must be satisfied from the evidence beyond a reasonable doubt:

(A) of the existence of a combination of five or more persons as alleged who collaborated in carrying on criminal activities as alleged; and

(B) of the intent on the part of such defendant to establish, maintain or participate in the combination or its profits as alleged; and

(C) of the agreement by such defendant with at least one other alleged person that the unlawful conduct alleged be engaged in by one or more of them; and

(D) that the defendant and at least one other alleged person performed an overt act as alleged in pursuance of the agreement.

Unless all of the foregoing requirements have been proved beyond a reasonable doubt as to any individual defendant, under the instructions herein given you, then you must acquit that defendant and consider whether the requirements have been proved as to the other defendants individually.

We agree with the State that there is no error since the charge requested was substantially similar to the charge given. *Le-Duc v. State*, 593 S.W.2d 678, 684 (Tex.Cr. App.1980); *Diaz v. State*, 648 S.W.2d 721, 723 (Tex.App.—Corpus Christi 1983, no pet.). Appellant's tenth point of error is overruled.

■ In his eleventh point of error, appellant contends the trial court commented on the weight of evidence during an exchange of remarks between the trial court and defense counsel.

■ TEX.CODE CRIM.P. art. 38.05 provides:

In ruling upon the admissibility of evidence, the judge shall not discuss or comment upon the weight of the same or its bearing in the case, but shall simply decide whether or not it is admissible; nor shall he, at any stage of the proceeding previous to the return of the verdict, make any remark calculated to convey to the jury his opinion of the case.

To constitute reversible error, a comment by the trial judge must be reasonably calculated to benefit the state or prejudice the defendant. *McClory v. State*, 510 S.W.2d 932, 934 (Tex.Cr.App.1974); *Carrasquillo v. State*, 742 S.W.2d 104, 113 (Tex.App.— Fort Worth 1987, no pet.); TEX.CODE CRIM.P. art. 38.05.

State witness Danny Green testified that as part of an undercover operation he purchased cocaine from David Willis. On cross-examination, defense counsel attempted to impeach Green's testimony by referring to a prior deposition in which Green had testified that he had purchased cocaine from Danny Lewis. Green remembered the deposition but did not recall referring to the person by the name of Danny Lewis. Green claimed that any reference to "Danny Lewis" in this context in the deposition was the court reporter's error.

Later, when Judy Lindley's attorney cross-examined Ranger Lane Akin, he prefaced a question by referring to Green's inconsistent testimony. Ranger Akin attempted to explain the inconsistency. Lindley's attorney complained that the answer was non-responsive. The court replied that if the defense counsel wanted to ask questions about people's identity, the court would allow Ranger Akin to explain the deposition. Defense counsel said, "That's quite all right, Your Honor, but let me ask the question." Defense counsel asked his question and the court allowed the witness to explain the deposition. The witness explained there was a mistake in the transcript and that he was present when Danny Green discovered the error and corrected the name on the transcript to read David Willis. The following complained of exchange occurred:

COURT: Mr. Holmes, do you have the original of that deposition?

HOLMES: No, Your Honor, I don't. I wish I did.

COURT: Where is the original?

HOLMES: I don't have any idea.

COURT: Are you questioning the witness about something that wasn't true and correct?

HOLMES: Your Honor, I'm questioning the witness about—

COURT: I mean, when you use a deposition here in court—was it a deposition which was signed?

HOLMES: Your Honor, it was a deposition with a copy—

COURT: I'm going to ask you to produce the original deposition, please.

HOLMES: Your Honor, I do not have the original deposition.

COURT: I'm asking you to produce it to this Court.

HOLMES: Your Honor, I'm going to object to being put in that position in front of this jury. That deposition is not in my possession. It has never been in my possession.

COURT: You have represented to the Court that it was a deposition that was duly taken, and I want to see it. I just want to see it.

Holmes objected that the court's participation was a comment on the weight of the evidence. The court instructed the jury as follows:

Well, I will instruct the jury in that regard that the Court is not entitled to make any comment on the weight of the evidence; that is to say, I'm not allowed or permitted under the law and do not intend to say anything which would affect the jury's deliberation either as to the credibility or as to the facts proved. And you are instructed to disregard anything that I may have said in this trial concerning any of the evidence, because it is not my province to do so, and in the charge to the jury, I will give you further written instructions that you are not to base your verdict in any way upon any impression that you might have concerning anything the court has stated. You are to disregard that entirely.

The State conceded (at oral argument) that the trial court erred; however, it contends the trial court's instruction cured the error. We agree that the error was not so egregious that its effect could not be removed by the jury instruction. A jury instruction by a trial judge to disregard any comments made by him is generally sufficient to cure error, if any, in his comments. *Marks v. State*, 617 S.W.2d 250, 252 (Tex.Cr.App.1981); *Reyes v. State*, 656 S.W.2d 168, 171 (Tex.App.—San Antonio 1983, no pet.). In this case, the trial judge immediately gave a lengthy instruction to the jury. Also, the court's charge instructed the jury as follows:

You are instructed that you are not to allow yourselves to be influenced in any degree whatsoever by what you may think or surmise the opinion of the court to be. The court has no right by any word or any act to indicate any opinion respecting any matter of fact involved in this case, nor to indicate any desire respecting its outcome. The court has not intended to express any opinion upon any matter of fact in this case, and if you have observed anything which you have or may interpret as the court's opinion upon any matter of fact in this case, you must wholly disregard it.

We conclude that beyond a reasonable doubt the trial court's comment made no contribution to the conviction. TEX.R. APP.P. 81(b)(2). Appellant's eleventh point of error is overruled.

The judgment of the trial court is affirmed.